Two questions are made in this case: First, is the second proviso to the third section of the act of 1806 prospective, or is it confined to gifts theretofore made? If it is prospective, at what time shall the slaves be valued? At the time they were put into the possession of the child, or at the time of the parent's death? The first question was decided in the affirmative by this Court in Davis v. Brooks, 7 N.C. 133. The last question has not heretofore arisen. Were we disposed to reexamine the first question, we see no reason to doubt the correctness of the decision in Davis v. Brooks. The proviso can only be confined to gifts theretofore made, by considering it to be a proviso confined to third person, where it is placed, and not applicable to the first, or rather to the whole act, its spirit being contained in the first section. (304) The proviso withdraws the case made in it from the operation of the rule created by the act itself, which case would have been within that rule but for the proviso. The rule prescribed in the third section of the act relates to the time in which suits shall be brought on parol gifts of slaves, made before the passing of the act. The case made in this proviso could not have fallen within the operation of that rule, for that rule fixes the time within which those who are out of possession shall bring their actions. The case made in the proviso is where the claimant is in possession and cannot bring an action. He, therefore, needs not the aid of the proviso to shield himself from the operation of the rule created by the third section, for it cannot reach him. Neither can the least reliance be placed on the phraseology of the proviso, thereby to confine it to past transactions. The Legislature looked to the death of the parent as a consummation of the transaction. The fact of placing the property in the possession of the child was only inceptive, looking to the death of the parent for its consummation. The expression "shall have put" was proper to make the case intended to be embraced by the proviso, for the placing in possession must necessarily have preceded the death of the parent. On the contrary, if the proviso is considered as withdrawing the case made by it from the operation of the first section, it is plain, sensible, and intelligible. That section declares that no gift thereafter to be made of any slave shall be good unless the same shall be in writing. The case made in the proviso is a gift of a slave, and not in *Page 163 
writing, which the Legislature declared should be good. That can only be effected by withdrawing from the operation of the first section the case supposed in the proviso. It is therefore a proviso to that section, which being entirely prospective, the proviso has of necessity the same character, and is prospective, also. Most usually, to be sure, a proviso is to be taken as an exception to or as belonging to the section in which it is found. But this is not necessarily the (305) case. Where, from its nature, it cannot form an exception to the rule prescribed in the section of which it is placed, it must be referred to some other part of the act. It cannot be referred to that where it is placed in this case, for it there would lose its essential quality. I have been induced to go at large into this question from the zeal with which this point was pressed upon the Court, notwithstanding Davis v. Brooks, and the general impression of the profession.
This case then presents the second question, above stated. It is the death of the parent intestate which validates and makes good the gift. Without this requisite, the case would fall clearly within the first section of the act. With it, it stands confirmed, as if the act had never been passed. The act of putting the property into the possession of the child makes the gift, it it be not subsequently revoked, or (should the expression be preferred) if consummated by the parent's permitting the slave to remain with the child, and dying intestate, either wholly or as to the particular slave. For should a will be made, and the property thus given not disposed of — that is, should the parent die intestate as to it — the case would be still within the proviso, so far as to make the gift good. For, however we may be disposed to follow up the erroneous decisions of this Court on the question of advancements, and bringing into hotchpot, it is evident that there is no such thing as bringing into hotchpot upon a partial intestacy. When I say there is no such thing, I mean that thereshould be no such thing. The principle upon which hotchpot is founded is against it; and, however, the cases may stand, no analogies can be drawn from them. It is not a gift at the death, but at the time the slave was placed in the possession of the child, and the circumstances stated in the proviso are evidence, in the estimation of the Legislature, equal to that which is required to a valid gift by the first section. The Legislature has placed both cases on the same ground. Were (306) it not so, what is to become of the issue of the slave born afterwards, no provision being made by the act as to that; it speaking only of the slaves placed in the possession of the child? The case so warmly pressed by the plaintiff's counsel does not at all improve this construction, to wit, the withdrawal of the mother from the possession of the child. Its only effect would be to prevent the operation of this proviso as to the mother; it would leave her issue to be affected by it. Neither *Page 164 
is it correct to say that the property must be valued at the time the gift was perfected. It should be valued as it was when the parent intended to pass the property. The change of possession has the character of a gift; but it wanted the evidence of intent, which the Legislature required by the first section, to make it valid, viz., a writing evidencing an intent to give. In the proviso they substituted what they deemed equivalent to writing. The substitute did not consist of a single act, but of a series of acts. The property did not pass until all were completed. But then it was a gift, and a gift from the commencement. For the transaction is entire; it cannot be divided. The first step is an necessary as the last; all parts compose the whole. To make it a gift only from the death of the parent would be to disregard one of the most essential qualities of a gift, the delivery of possession. In the opinion of the Legislature, the mischiefs intended to be prevented by the first section — the setting up of spurious gifts by perjury and misconception — would not arise in the case within the proviso. They, therefore, not only withdrew that case from the operation of the act, but validated it, and made it a good gift. What was made a valid gift? The delivery of possession — the only part of the transaction which on its face bore the character of a gift. The other circumstances are only evidences of that intent, and are in the nature of a confirmation, which relates back, and validates the act confirmed.
(307) A contrary exposition would be attended with the most unjust consequences. Property is placed in the hands of two children: with one is placed a young woman, whose maintenance, with that of her issue, is a burden far beyond the value of their services; with the other is placed a male slave in the prime of life. He is worn out entirely in the service of the child, and at the parent's death is worth nothing. If the property is to be valued as it is then, one child not only labors for the other, but for one who has already drawn largely from the stock on which he had no greater claim than the first. The elder children have also a claim to an advancement in the lifetime of their parents, not generally adverted to, but equal to those of the younger. If a distribution of the whole of the parent's estate is postponed until his death — that is, takes place at the same time — the younger children receive equally with those whose claims have been long delayed, and which, to make them all equal, should have drawn something like interest or increase for the delay. The claims of children do not fall on the parent to the same amount at the same time, but at different times, in different amounts, according to their respective ages. The mode of valuing property at the time the parent places it in the possession of a child preserves this equality; the other destroys it. *Page 165 
Upon the whole, I consider this as an advancement made when the slaves were placed with the children, and, like all other advancements, to be valued at that time, or when made.
PER CURIAM. Affirmed.
Cited: Hinton v. Hinton, 21 N.C. 588; Hollowell v. Skinner, 26 N.C. 171;Cowan v. Tucker, 27 N.C. 81; Lamb v. Carroll, 28 N.C. 5; Person v.Twitty, ibid., 117; Cowan v. Tucker, 30 N.C. 428; Meadows v. Meadows,33 N.C. 150; Davie v. King, 37 N.C. 204; Richmond v. Vanhook, 38 N.C. 586;Hicks v. Forrest, 41 N.C. 531; Harrington v. Moore, 48 N.C. 58;Airs v. Billops, 57 N.C. 24.
Dist.: Hurdle v. Elliott, 23 N.C. 176.
(308) *Page 168 
(309)